97-08/MEU/SL
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
E-SHIP LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
E-SHIP LTD.,

                         Plaintiff,

   -against-                              **VERIFIED COMPLAINT**

ARCTIC SHIPPING COMPANY,

                         Defendant.
------------------------------------------------------------------x

      Plaintiff, E-SHIP LTD. (hereinafter "E-SHIP") as and for its Verified Complaint against Defendant ARCTIC SHIPPING COMPANY (hereinafter "ARCTIC") alleges upon information and belief as follows:

      1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party and a claim for the breach of a maritime ship management contract. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action also arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2. At all times material hereto, Plaintiff E-SHIP was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 198 Old Bakery Street, Valletta, Malta.

3. At all times relevant hereto, Defendant ARCTIC was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at 2 Morskaya Street, Tiksi, Skha (Yakutia) 678400, Russian Federation.

### COUNT ONE – BREACH OF CHARTER PARTY

4. On or about June 15, 2007, Plaintiff E-SHIP, as charterer, entered into a maritime charter party contract with Defendant ARCTIC, as disponent owner[1], for the charter of the M/V ICE PRINCESS on an amended BALTIME 1939 form for four consecutive periods of 6 months plus/minus 30 days each at E-SHIP's option (hereinafter the "charter with Arctic").

5. The vessel was delivered into the service of E-SHIP on July 9, 2007 at 1130 GMT abeam of Gibraltar.

6. Among other terms and conditions of the charter with Arctic, ARCTIC was obligated to maintain the vessel in a thoroughly efficient and seaworthy state in respect to her hull and machinery and make available the whole reach and burthen of the vessel, including deck capacity, while the M/V ICE PRINCESS was in the service of E-SHIP.

7. According to the Captain of the M/V ICE PRINCESS (an officer of ARCTIC), at full capacity and in seaworthy condition, the vessel was fit to load 2600 metric tons of creosoted pole cargo in her holds and 800 metric tons of same on deck.

---

[1] Arctic is not the registered owner of the vessel, but instead chartered it from another entity.

8. The E-SHIP – ARCTIC charter gave E-SHIP the right to sub-charter the vessel.

9. E-SHIP sub-voyage chartered the M/V ICE PRINCESS to non-party Hawknet Ltd. on or about September 7, 2007 to carry a cargo of creosoted pole cargo from loading ports at Soderhamn, Sweden and Valkom, Finland to discharging ports at Lattakia or Tartous, Syria (hereinafter the "sub-charter").

10. The vessel's heeling side tanks and fuel tanks had been cracked prior to the delivery date and E-SHIP only became aware of the problem upon loading at Soderhamn.

11. The cracks in the heeling side tanks and fuel tanks prevented them from being filled to capacity which decreased the vessel's stability and reduced the amount of cargo the vessel could safely carry.

12. As a result, and in breach of the head charter, the vessel was unable to carry 3,375 metric tons of the creosoted pole cargo and, Hawknet made a claim for deadfreight against E-SHIP in the sums of $19,764.80 and $28,200.00 (for a total of $47,964.80) which Hawknet deducted from the freight to be paid to E-SHIP.

13. After the conclusion of the sub-charter, and in further breach of the charter with Arctic, the M/V ICE PRINCESS (while still in the service of E-SHIP under the charter with Arctic) experienced main engine problems and structural damage attributable to unseaworthy conditions on the vessel.

14. Consequently, E-SHIP placed the vessel off-hire for a period of 139 days, during which time the vessel was unable to perform any of its obligations under the charter with Arctic.

15. Because of the unseaworthy condition of the vessel, following the 139 day off-hire period, on or about January 25, 2008 E-SHIP chose to exercise its option to redeliver the

vessel in advance of the anticipated conclusion of the charter with Arctic which would otherwise have ended in or about July 2009.

16. At the conclusion of the charter with Arctic, E-SHIP issued a re-delivery invoice to ARCTIC showing a balance in favor of E-SHIP in the amount of $264,963.62.

17. In further breach of the charter with Arctic, and despite due demand, ARCTIC has refused and/or otherwise failed to pay to E-SHIP the sums owing under the charter, and the entire amount of $306,431.36 remains unpaid and outstanding.

18. Had the vessel not been unseaworthy, E-SHIP would have continued the charter for a further 350 days (which time excludes the off-hire and scheduled dry-docking periods) and E-SHIP would have made a daily profit in the sum of $2,500.00 during this period. Accordingly, as a direct result of ARCTIC's breaches, E-SHIP was deprived of its further anticipated profit of $875,000.00.

19. The charter with Arctic contains a mandatory and binding arbitration clause which requires the parties to arbitrate any and all disputes at London, England. E-SHIP specifically reserves its right to arbitrate the substantive matters at issue. Arbitration has or soon will be commenced between the parties.

20. This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for Plaintiff E-SHIP's claims made or to be made in arbitration in London, as agreed by the parties.

21. As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim in admiralty and the amount sued for herein.

22. Plaintiff E-SHIP estimates, as nearly as can presently be computed, that the recoverable legal expenses and costs of prosecuting its claims in London arbitration will be $250,000.00. Interest anticipated to be awarded is estimated to be $136,386.63 (calculated at the rate of 5.5% per annum compounded quarterly for a period of 2 years, the estimated time for completion of the proceedings in London, on the base amount of $1,181,431.36).

23. In all, the claim for which Plaintiff E-SHIP sues for breach of the contract of charter party, as near as presently may be estimated, totals $1,567,817.99, no part of which has been paid by Defendant ARCTIC. Plaintiff E-SHIP specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure E-SHIP.

## COUNT TWO – BREACH OF SHIP MANAGEMENT CONTRACT

24. On or about December 14, 2007, Plaintiff E-SHIP entered into a maritime ship management contract on the SHIPMAN 98 form ("the contract") with Defendant ARCTIC for the provision of maritime services by E-SHIP in connection with the M/V ICE PRINCESS for a period of 2 years.

25. Among other services to be provided under the contract, E-SHIP was obligated to perform the following maritime services for the M/V ICE PRINCESS: (a) Crew management, which included supervising the vessel's crew's efficiency; (b) Technical management, which included arranging and supervising the vessel's dry dockings, repairs and alterations, ensuring the vessel's upkeep and compliance with laws of the vessel's flag and places the vessel trades, supervising the vessel's requirements and recommendations of its classification society, arranging the supply of necessary stores, spares and lubricating oil to the vessel, and appointing of surveyors and technical consultants for the vessel; (c) Commercial management, which

included issuing voyage instructions, appointing local agents for the vessel at trading ports, appointing stevedores to load and discharge cargo on and off the vessel, arranging surveys of the vessel associated with its commercial operation; (d) Provisions, which included arranging the supply of provisions for the vessel; and (3) Bunkering, which included arranging bunker fuel for the vessel of the quality required in the vessel's trade.

26.  Under the terms of the ship management contract Defendant ARCTIC was obligated to pay to E-SHIP a fixed management fee of EUR2,500 per month. In addition, Defendant ARCTIC was obligated to pay to Plaintiff E-SHIP a commission of 2% of the vessel's income payable in monthly installments in advance, the first installment payable on the commencement of the contract.

27.  E-SHIP commenced performance of its obligations under the contract.

28.  In breach of the contract, and despite due demand, ARCTIC failed and/or otherwise refused to pay amounts owing for any of the services provided by E-SHIP for ARCTIC's benefit under the contract.

29.  In wrongful repudiation of the contract, ARCTIC improperly canceled and has refused to perform any of its obligations under the contract.

30.  On or about February 16, 2008 Plaintiff E-SHIP accepted Defendant ARCTIC's actions as being in repudiatory breach of the contract.

31.  In breach of the contract ARCTIC has failed and refused to pay E-SHIP the sum of EUR60,000 (ie. $90,254.00) (EUR2,500/mo. times 24 months) representing the management fee due under the improperly cancelled contract.

32.  In further breach of the contract ARCTIC also failed to pay the commissions due to E-SHIP.

33.     It was anticipated by E-SHIP that the vessel would be in service earning daily hire at the rate of EUR3,650 for 20 months (or 600 days) of the 24 month management contract.

34.     As a result of the breach of the contract by Defendant ARCTIC, Plaintiff E-SHIP has been further damaged in the sum of EUR43,800 (ie. $65,958.00) in the form of lost commissions calculated as follows: EUR3,650/day x 600 days x 2%).

35.     Despite due demand by E-SHIP and in breach of the contract, Defendant ARCTIC has failed and refused to pay the sums due and owing under the contract.

36.     The contract contains a mandatory and binding arbitration clause which requires the parties to arbitrate any and all disputes at London, England. E-SHIP specifically reserves its right to arbitrate the substantive matters at issue. Arbitration has or soon will be commenced between the parties.

37.     This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for Plaintiff E-SHIP's claims made or to be made in arbitration in London, as agreed by the parties.

38.     As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the Plaintiff's main claim in admiralty and the amount sued for herein.

39.     Plaintiff E-SHIP estimates, as nearly as can presently be computed, that the recoverable legal expenses and costs of prosecuting its claims in London arbitration will be $250,000.00. Interest anticipated to be awarded is estimated to be $18,033.40 (calculated at the rate of 5.5% per annum compounded quarterly for a period of 2 years, the estimated time for completion of the proceedings in London, on the base amount of $156,212.00).

40. In all, the claim for which Plaintiff E-SHIP sues for breach of the contract of charter party, as near as presently may be estimated, totals $424,245.40, no part of which has been paid by Defendant ARCTIC. Plaintiff E-SHIP specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure E-SHIP.

## PAYING AGENT INCHCAPE SHIPPING SERVICE

41. Defendant ARCTIC, as principal, has an agency contract with non-party Inchcape Shipping Services of Tokyo, Japan which acts as agent for the M/V ICE PRINCESS.

42. Pursuant to the agency contract, non-party Inchcape Shipping Service regularly receives and makes payments for the benefit and on behalf of Defendant ARCTIC in respect to the income and operation of the vessel.

43. As such, any funds being sent to or from Inchape Shipping Services of Tokyo with respect to the vessel are property in which Defendant ARCTIC has an attachable interest.

## REQUEST FOR RULE B RELIEF

44. Upon information and belief, and after investigation, Defendant ARCTIC cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff believes that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant ARCTIC SHIPPING COMPANY (collectively hereinafter, "ASSETS"), including but not limited to

ASSETS in its name and/or being transferred for its benefit funds by Defendant's paying agent Inchcape Shipping Services of Tokyo, Japan at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

45.   The total amount sought to be attached pursuant to the above is $1,992,063.39.

WHEREFORE, Plaintiff E-SHIP LTD. prays:

a.   That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b.   That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$1,992,063.39** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant ARCTIC SHIPPING COMPANY, including but not limited to ASSETS in its name and/or being transferred for its benefit by Inchcape Shipping Services at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.   That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and

enforcement of any award entered against the Defendant in the London proceedings; and

    d.    For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       February 28, 2008

By:   FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
E-SHIP LTD.

*[signature]*

Michael E. Unger (MU 0045)
80 Pine Street
New York, NY 10005
(212) 425-1900

## ATTORNEY VERIFICATION

State of New York     )
                      ) ss.:
County of New York    )

MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Michael E. Unger

Sworn to before me this
28th day of February, 2008

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/08

NYDOCS1/299584.1                     11